## 36686. JUSTUS v. THE STATE.

JORDAN, Chief Justice.

Buddy Earl Justus, the appellant, pleaded guilty to the October 7, 1978, murder, kidnapping with bodily injury, armed robbery and rape of Rosemary S. Jackson. Following a hearing, the appellant was sentenced to life imprisonment for the kidnapping with bodily injury, the armed robbery, and the rape, and to death for the murder. The case is presently before this court for mandatory sentence review, and is a companion case to *Goins v. State,* 245 Ga. 62 (262 SE2d 818) (1980).

Although defense counsel has not enumerated any error in the proceeding below, he has requested this court to independently review the record to determine if error occurred.

The record establishes that, following the appellant's indictment, he informed the district attorney that he wished to plead guilty to all charges. In response the district attorney went to the appellant's jail cell and advised the appellant of his right to a trial by jury and his right to either a retained or appointed attorney. The district attorney further advised the appellant at this time that the state would seek the death penalty, and that said penalty would probably be imposed.

On May 23, 1980, the appellant was given a hearing in the Gwinnett Superior Court at which time the trial judge took the following actions.

First, the trial judge appointed an attorney who had been practicing law for fourteen to fifteen years and had handled over seventeen capital cases to represent the appellant. Second, he apprised the appellant of all of his constitutional rights, and told him that if the circumstances of the case otherwise warranted it, he had no conscientious, moral or religious objections to a sentence of death.

---

(The appellant answered that he understood this and that he understood the rights explained to him.) Third, the trial judge made the following findings of fact: the appellant was twenty-eight years old and had attended school through the tenth grade; he had been tried in a court of law three times prior to the present proceedings (he had one retained and two appointed attorneys); and, he understood the nature of the present proceeding. Finally, the trial judge set down June 13, 1980, ten days hence, as plea day.

During the ten day interim prior to plea day, the district attorney turned over to the appellant's appointed attorney, in addition to his entire file, the list of witnesses, the statement which the appellant had made to the Gwinnett County Police, a copy of the appellant's FBI rap sheet, a mental evaluation of the appellant, and the State Crime Lab Report.

On June 13, 1980, the plea hearing was held before the Gwinnett Superior Court. During said hearing, the appellant, with his attorney present, was extensively questioned by both the district attorney and the trial judge as to whether he understood each and every right and as to whether he was under the influence of any drugs, medicines or alcohol. Further, the trial judge explained to the appellant the alleged aggravating circumstances.

As the result of additional questioning, the trial judge found that the appellant had consulted with his attorney four times, and that his attorney had given the appellant all the time he needed or wanted to talk with him and discuss his situation (the appellant had had the attorney's phone number and could have called him at any time to discuss the case).

The trial judge also found that the appellant understood that he was pleading guilty without any recommendation on behalf of the state, and that the appellant was pleading guilty freely and voluntarily without promise of reward or threat of harm.

Finally, the trial judge found that the appellant was factually guilty and that he persisted in his plea of guilty despite his attorney's determination that the appellant had a better chance to avoid the death penalty with a jury than with the court (the attorney admitted, however, that despite discovery and consultation with his client, there were no material defenses to the charge).

The record establishes that the appellant was given a psychological evaluation in Virginia and, upon motion by defense counsel, in Georgia. These evaluations affirmatively show that the appellant was sane at the time he committed the crimes and could actively participate in his defense and was aware of the nature of the proceedings against him.

Upon independent review of the record, we find that the plea

was properly accepted by the trial court and that no error occurred. See *Fair v. State,* 245 Ga. 868 (268 SE2d 316) (1980); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Hooks v. State,* 233 Ga. 149 (210 SE2d 668) (1974).

### Sentence Review

The death sentence imposed in this case must be reviewed by this court under the standards set forth in Code Ann. § 27-2537 (c) (1-3). Thus, we must determine whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; whether the evidence supports the trier of fact's finding of the statutory aggravating circumstances; and, whether the sentence of death was excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant.

We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. The trial judge found beyond a reasonable doubt the existence of the following statutory aggravating circumstances: (1) the offense of murder was committed while the offender was engaged in the commission of an additional capital felony, to wit: the armed robbery of Rosemary Jackson, Code Ann. § 27-2534.1 (b) (2); (2) the offense of murder was committed while the offender was engaged in the commission of an additional capital felony, to wit: the kidnapping of Rosemary Jackson with bodily injury, Code Ann. § 27-2534.1 (b) (2); (3) the offense of murder was committed while the offender was engaged in the commission of an additional capital felony, to wit: the rape of Rosemary Jackson, Code Ann. § 27-2534.1 (b) (2); and (4) the offense of murder was outrageously or wantonly vile, horrible and inhuman in that it involved torture, depravity of mind and an aggravated battery to the victim, Code Ann. § 27-2534.1 (b) (7).

From the evidence in this case, the trial court was authorized to find that the appellant and Dean Goins, a co-defendant, came to Georgia from Florida and decided to steal a van and rob someone. They pulled into a shopping center and sat there drinking beer until Rosemary S. Jackson, who was driving the type of van they desired, parked her van in the shopping center parking lot.

They abducted the victim at gunpoint and took her to Crack Road, a dirt access-road. The appellant drove the victim's van with the victim inside, and Goins drove the car that they had driven up from Florida.

On the way to the execution site the appellant stopped at a truck stop and made the victim purchase a C. B. unit, and pay for it with a credit card. The two proceeded to Crack Road where the appellant raped, stabbed and shot Mrs. Jackson. The co-defendant, Goins, was

present at the scene but did not participate in the rape or murder. The New York tag was removed from the car and placed on the van. The car was then left near the body, and the appellant and his co-defendant left in the van ultimately being arrested in Virginia.

The state presented evidence that the chief jailer had observed the appellant in jail and that the appellant was normal, and was totally aware of his surroundings, capable of taking care of himself and coordinating his daily activities, conversing with his cell mates and the jail staff.

Forensic evidence established that the victim had been raped and had suffered three stab wounds to her body (one stab wound went through the right breast into the right lung through the diaphragm and down into the liver, and two wounds went into the back, one to the lower part of the shoulder blade, and the other one to the top of the right shoulder). The stab wounds occurred prior to death and caused considerable pain. The victim was then shot execution style with a single gunshot wound to the base of the skull just above the hairline. The appellant's fingerprints were located in the abandoned automobile.

The manager of the grocery store at the shopping center where the abduction took place became suspicious of the two men as they sat in the parking lot, and as he went to lunch, he wrote down the New York license plate number. The appellant was identified as the man coming in with the victim to the Atlanta Gateway Truck Stop where the C. B. radio was purchased.

In that the sentence of death in this case rests partially upon a finding of Code Ann. § 27-2534.1 (b) (7), it must be reviewed in light of the United States Supreme Court's decision in Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980), as construed by this court in Hance v. State, 245 Ga. 856 (268 SE2d 339) (1980).

"Torture" as the term is used in the statute occurs when the victim is subjected to serious physical abuse prior to death. Hance v. State, supra. Serious sexual abuse may be found to constitute serious physical abuse. Hance v. State, supra.

Rosemary S. Jackson was not killed instantaneously nor was she the victim of a domestic murder. She gave the appellant no reason whatsoever to assault her and was in no manner threatening. The appellant fled and attempted in every manner to hide his crime. See Godfrey v. Georgia, supra. Ms. Jackson was abducted and sexually assaulted prior to death. Therefore, the murder was outrageously or wantonly vile, horrible or inhuman in that this murder is distinguishable from ordinary murders in which the death penalty is not appropriate. Green v. State, 246 Ga. 598 (272 SE2d 475) (1980). Under the facts of this case, we find that murder was of the type

universally condemned by civilized society as wantonly vile, horrible or inhuman, as it involved depravity of mind of the defendant and torture to the victim as set forth above.

The evidence supports a finding of the four aggravating circumstances by a rational trier of fact beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The appellant's co-defendant, Dean Goins, was sentenced to life imprisonment. See *Goins v. State,* supra. The question is thus presented whether, in light of the lesser sentence imposed on the co-defendant, appellant's sentence is disproportionate.

Each case must be evaluated on its unique factual circumstances, as there is no simplistic rule that a co-defendant may not be sentenced to death when another co-defendant receives a lesser penalty. *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *McClesky v. State,* 245 Ga. 108 (263 SE2d 146) (1980). We find material distinctions between appellant's case and the case of the co-defendant. First, the appellant was the actual perpetrator of the murder and rape of the victim, whereas the co-defendant was not, and in fact remained in the car while the killing took place. Second, there was evidence that the appellant was the prime mover and that to some extent Goins was coerced into assisting the appellant in the commission of the crimes. Juries in similar circumstances have sentenced "triggermen" to death while the same penalty has not been imposed on co-defendants. These cases have been affirmed by this court. *McClesky v. State,* supra; *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974).

We find that the appellant's sentence to death is neither excessive nor disproportionate to the penalty imposed in the case of his co-defendant. In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases listed in the Appendix support the affirmance of the death penalty.

This was the brutal rape and murder of an armed robbery victim committed for the sole purpose of financial gain and sexual gratification. The appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Gregory, J., not participating.*

DECIDED MARCH 12, 1981.

*Wynn Pelham,* for appellant.

*Bryant Huff, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.

APPENDIX.

*Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Davis v. State,* 236 Ga. 804 (225 SE2d 241) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Spraggins v. State,* 240 Ga. 759 (243 SE2d 20) (1978); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); 246 Ga. 261 (271 SE2d 352) (1980); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); 246 Ga. 262 (271 SE2d 272) (1980).