40912. ALLEN v. THE STATE.
(321 SE2d 710)

CLARKE, Justice.

This is the second appearance of this death penalty case. Appellant, Stanley Edward Allen, and co-defendant Woodrow Davis were indicted in Elbert County for the murder, rape and robbery of Susie C. Rucker. In separate trials, they were convicted. The state sought the death penalty in both cases, but it was imposed in Allen's case only. The convictions were affirmed on direct appeal. *Davis v. State*, 249 Ga. 784 (294 SE2d 504) (1982); *Allen v. State*, 248 Ga. 676 (286 SE2d 3) (1982). However, Allen's death sentence was reversed for Witherspoon error. Ibid; Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). Upon retrial as to sentence, Allen was again sentenced to death. The issue of sentence is now here on direct

appeal and for review pursuant to the Unified Appeal Procedure and OCGA § 17-10-35.[1]

## Facts

Mrs. Rucker's body was lying on her kitchen floor when it was discovered by a neighbor at about 1:00 p.m. on January 6, 1981. Her underclothes were pulled down to her feet and her outer clothes were pulled up to her waist. "Vegetable" debris, i.e., leaves and pine needles, were present in her clothing and hair. There was a considerable amount of blood on her upper legs and about the perineal region of her body.

An autopsy was conducted by Dr. Byron Dawson to determine the cause of death. He observed that one side of her face and the back of her head were swollen and bruised. Internal examination of the head revealed a subdural hemorrhage along the base of the brain which Dr. Dawson described as a potentially fatal lesion which due to her death did not "finish developing."

On her chest was a "rather intense" contusion. Her sternum and several ribs were broken. Internal bleeding resulting from this injury had half-filled one of the pleural cavities. Dr. Dawson testified that this internal bleeding eventually would have caused her death.

Examination of the vaginal canal revealed a tear which, because of an earlier hysterectomy, opened directly into the abdominal cavity. The injury to this area produced "maybe a potentially fatal hemorrhage and certainly . . . a potentially fatal peritonitis, were it not treated appropriately at some reasonable time."

All of these injuries, according to Dr. Dawson, occurred prior to Mrs. Rucker's death. He said her death was caused by manual strangulation, evidenced by traumatic hemorrhage in the internal musculator of the neck and petechial hemorrhage in and about the neck and face, including the eyelids and gums.

One of the front windows was broken out of Mrs. Rucker's home. Blood was observed on the floor of the bedroom and kitchen. Portions of her clothing and two "Ace" bandages were found in a wooded area to the rear of her home. Drag marks were observed between that area and the back porch.

Allen was arrested and gave a statement to police which was admitted in evidence at trial. This statement was summarized in our prior opinion as follows: Allen stated that he and Davis were together

---

[1] The verdict of death was returned August 12, 1982. A motion for new trial was filed August 23, 1982, and an amendment thereto was filed December 3, 1982. The motion, as amended, was heard February 8, 1983, and denied January 26, 1984. The case was then appealed to this court and orally argued June 26, 1984.

the evening of January 5, 1981. "Davis borrowed his car at about 10 p.m. Davis returned with the car at about 10:30 p.m. and said 'Stanley, come on and go with me, we got something to do.' As they drove, Davis told him he knew an old lady who had plenty of money and he was going to get some of it. They went to the victim's home, where Davis knocked on the door and said that he was Elijah Hunter (Elijah Hunter was a neighbor of the victim's) and was out of gas. She responded that he wasn't Elijah Hunter. After she went into the bedroom and came out with a gun (either a rifle or a shotgun), Davis and the defendant ran back to the car and left. The defendant returned to his cousin's, arriving about 11 p.m., and Davis left in his car. Davis returned about 11:15, picked him up, and asked if he wanted to go back; the defendant responded that he did. The defendant knocked on the back door. When the victim, a 72-year-old woman, came to answer the door, Davis entered through a front window, grabbed the victim, and opened the back door and let the defendant in. The defendant looked around the house. He then followed Davis into the woods behind the victim's house where he found Davis 'having sex' with the victim. She was pleading with Davis, asking him not to hurt her. Davis and the defendant carried the victim back into her home and laid her on a bed. The defendant then 'had sex' with her. While this was going on, Davis was looking through the house for money, but found only jewelry. Unable to find any money, Davis threw the victim on the floor and, according to the defendant, Davis started stomping on her, asking 'Where's the money, where's the money?' The defendant testified he pulled Davis off the victim and they left the house. On the way out, the defendant picked up a butcher knife but he fell and dropped it before he got to his car. Davis took some jewelry, which he kept himself. The defendant also stated that he was 26 and weighed about 170 at the time of the crime, and Davis was 18 and weighed 120 or 130." *Allen v. State*, supra at 676-77.

After he and Davis left the Rucker home, Allen was seen by several witnesses with straw in his hair, blood on his clothes, and a badly swollen right hand on which he wore an Ace bandage. He explained to his girl friend that he had been in a fight.

Allen's clothes were examined by a serologist from the state crime lab. The blood on his clothes was of the same international blood group as that of the victim. Seminal fluid and spermatozoa were present in his underwear. In addition, a pubic hair discovered in his underwear was microscopically identical to that of Mrs. Rucker.

A ring belonging to Mrs. Rucker was found under the driver's seat of Allen's car.

## Issues[2]

1. In his first enumeration, Allen complains of a photograph admitted in evidence which shows a table near the broken front window of the victim's home on which were a Bible, a book written by evangelist Billy Graham, and numerous shards of broken glass, indicating that the window was broken from the outside. We find no error. "[P]hotographs depicting the crime scene are relevant and admissible." *Putman v. State*, 251 Ga. 605, 608 (3) (308 SE2d 145) (1983). This is no less true at a re-sentencing trial. *Blankenship v. State*, 251 Ga. 621 (308 SE2d 369) (1983).

2. In his second enumeration, Allen contends the trial court erred by charging: "Whatever your verdict is, it must be unanimous; that is, agreed to by all." We disagree. The jury was not told that a verdict was required; the jury was told only that any verdict it reached must be unanimous. Compare *Legare v. State*, 250 Ga. 875 (1) (302 SE2d 351) (1983). The instruction given was a correct statement of the law. Ibid; *Felker v. State*, 252 Ga. 351 (13d) (314 SE2d 621) (1984).

3. In Enumeration 3, Allen contends the trial court erred by failing to instruct the jury on the law of circumstantial evidence. We note that Allen failed to request a charge on circumstantial evidence. Moreover, Allen stood convicted of murder and there was direct evidence of the only statutory aggravating circumstance contended for by the state. We find no error. *Whittington v. State*, 252 Ga. 168 (7) (313 SE2d 73) (1984); *Burger v. State*, 245 Ga. 458 (1) (265 SE2d 796) (1980).

4. The trial court did not commit reversible error by failing to instruct on expert witnesses absent a request. *Burger v. State*, supra.

5. In Enumeration 6, Allen contends that his character was impermissibly placed in issue by testimony that around 8 or 8:30 p.m. on January 5, 1981, Allen had gone alone to the home of Pierce Cobb, who lived six or seven miles from the victim. Allen asked if he could use Cobb's phone. Cobb refused to let him in.

Character is not a forbidden issue in the sentencing phase of a trial. *Fair v. State*, 245 Ga. 868 (2) (268 SE2d 316) (1980). In any event, regardless of the probative value of Cobb's testimony, Allen did not object to it and, absent any objection, we find no reversible error in its admission in evidence. *Mincey v. State*, 251 Ga. 255 (17) (304 SE2d 882) (1983).

---

[2] Trial counsel Tom Strickland filed an appellate brief urging error in the trial court's denial of his motion for new trial. Subsequently, attorney Andrew Hill was appointed to represent Allen on appeal and he has filed six additional enumerations of error. References in the opinion to numbered enumerations of error are to the Hill brief. However, pursuant to the Unified Appeal Procedure, as amended, 252 Ga. A-13 et seq., we also address alleged errors raised in the Strickland brief.

6. The only statutory aggravating circumstance contended by the state, and found by the jury, was that "[t]he offense of murder was outrageously or wantonly vile, horrible and inhuman in that it involved torture to the victim or depravity of mind on the part of the defendant." See OCGA § 17-10-30 (b) (7). Allen contends the trial court erred by failing to direct a verdict on this issue and by failing to grant his motion for new trial on the ground that the evidence was insufficient to support the jury's finding of this statutory aggravating circumstance.

We have stated that "torture occurs when a living person is subjected to the unnecessary and wanton infliction of severe physical or mental pain, agony or anguish." *West v. State*, 252 Ga. 156, 161 (Appendix) (313 SE2d 67) (1984). Moreover, "the fact that the victim was tortured . . . will also support a finding of depravity of mind . . ." *Hance v. State*, 245 Ga. 856, 862 (268 SE2d 339) (1980).

Prior to her death by strangulation, Mrs. Rucker was hit on the head so hard that she suffered a potentially fatal brain hemorrhage; she was kicked in the chest hard enough to break her sternum and several ribs and to cause potentially fatal internal bleeding; and she was raped so forcefully that she received potentially fatal injuries to her vaginal tract. The victim, an elderly woman weighing less than 100 pounds, was raped, brutally beaten, and then strangled to death. The evidence amply supports a finding of torture and depravity of mind.

Allen contends, however, that he did not torture Mrs. Rucker himself, and that the § (b) (7) aggravating circumstance is therefore inapplicable to him. We disagree. Although Allen's custodial statement indicated that Davis was the one who broke into the front window and who "started stomping" the victim and that Allen tried to pull Davis off, other evidence indicated that the extent of Allen's participation in the commission of the crime was greater than he was willing to admit. We note that it was Allen's hand that was injured, his hair that had straw in it, his clothes that had blood and seminal fluid on them, that he was the one who handled the butcher knife, and that it was his car in which the victim's ring was found.

Moreover, by his own admission, after Mrs. Rucker had been forcefully removed from her home, carried into the woods and raped by co-defendant Davis, Allen helped Davis carry the victim back into the house where Allen "had sex" with her. From this statement — together with the testimony of Dr. Dawson describing the considerable bleeding caused by injuries to the victim's vaginal tract and the photographs corroborating this testimony — it must be inferred either that Allen "had sex" with the victim after she had been severely injured by the Davis rape, or that Allen's own act was so savage that it caused the potentially fatal injuries to the victim's vaginal tract. In

either event, Allen directly participated in the intentional infliction of serious sexual abuse. This serious sexual abuse alone would have been sufficient to support a finding of torture and depravity of mind. *Hance v. State*, supra at 861.

We conclude that the jury's finding of the § (b) (7) statutory aggravating circumstance is supported by the evidence. OCGA § 17-10-35 (c) (2); Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Compare *Whittington v. State*, supra (9 b); *Phillips v. State*, 250 Ga. 336 (6) (297 SE2d 217) (1982).

7. Allen relies upon Enmund v. Florida, 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982), to argue that his death sentence is excessive and disproportionate.

Enmund holds that the Eighth Amendment forbids the imposition of the death penalty upon a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." We find that under no reasonable interpretation of the evidence in this case was Allen's participation in the murder of Mrs. Rucker so limited. Unlike Enmund — who was not present at the scene of the murder, who did not directly commit either the murder or the felony underlying the felony-murder conviction, and whose only participation in the crime was that he drove the get-away car — Allen was an active participant in the events that led to the victim's death.[3]

8. Allen also contends that his death sentence is excessive and disproportionate to the life sentence given to co-defendant Davis.

In *Hall v. State*, 241 Ga. 252 (8) (244 SE2d 833) (1978), this court held that our statutorily mandated proportionality review of death sentences includes special consideration of the sentences received by co-defendants in the same crime. Therefore, as we did in *Hall v. State*, we have examined the evidence presented at the co-

---

[3] The result in Enmund v. Florida does not turn on the mere fact that Enmund was convicted of felony murder. It is important to note how attenuated was Enmund's responsibility for the deaths of the victims in that case. Enmund did not directly commit the armed robbery. However, as the driver of the get-away car, he assisted in the commission of the robbery and thus was guilty of the robbery as a party to the crime. Then, since he was legally guilty of having committed the robbery, and since two people were unlawfully killed as a result of the commission of the robbery, Enmund was found guilty of murder under the felony murder rule, even though he did not kill, attempt to kill, or intend that a killing take place or that lethal force be employed. As we state above, Allen's culpability was not so limited.

Nonetheless, resolution of an Enmund issue is not facilitated by the practice of allowing a general verdict of guilty in a case in which both malice murder and felony murder are charged to the jury. Requiring the jury to specify whether the defendant is guilty of malice murder or of felony murder would clarify the jury's findings in this respect. Therefore, we suggest that in such a case the jury be instructed on *three* possible verdicts (guilty of malice murder, guilty of felony murder or not guilty) instead of the usual *two* (guilty or not guilty).

defendant's trial.

It was there shown that Davis had given several statements to law officers. He claimed at first that he had nothing to do with the crime except that he had given a ride to Allen afterwards. He later admitted entering the Rucker home after Allen first broke out the front window. Davis claimed that Allen took the victim outside while he (Davis) searched the house. Davis denied having harmed the victim. It was shown that Allen's clothes had blood and seminal fluid on them but that Davis' clothes did not. Davis testified at his trial that Allen forced Davis to join him in Allen's plan to rob Mrs. Rucker. Witnesses testified that Davis had a reputation in the community for being nonviolent and that he was a slow learner.

Allen and Davis have each attempted to portray the other as the more culpable party to the crime. However, the evidence as a whole provides greater support for Davis' attempt to portray himself as the less culpable party. In view of all the circumstances of the crime and of the defendants, including the difference in age and the extent of admitted culpability, we conclude that the death sentence imposed in Allen's case is not excessive or disproportionate to the sentence received by Davis. The fact that one jury concluded that Davis deserved mercy while another concluded that Allen did not was, we believe, based upon rational distinctions between the two defendants and the circumstances of their offenses. Compare *Horton v. State*, 249 Ga. 871 (13) (295 SE2d 281) (1982).

We further find that Allen's death sentence is neither excessive nor disproportionate to sentences imposed in similar cases generally. OCGA § 17-10-35 (c) (3). The cases listed in the appendix support the affirmance of the death penalty.

9. We find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 11, 1984.

*Andrew J. Hill, Jr.*, for appellant.
*Lindsay A. Tise, Jr., District Attorney, Francis J. George, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982); *Krier v. State*, 249 Ga. 80 (287 SE2d 531) (1982); *Justus v. State*, 247 Ga. 276 (276 SE2d 242)

(1981); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976).