## 45491. PRUITT v. THE STATE.

(373 SE2d 192)

Smith, Justice.

Mark Anthony Pruitt was convicted by a jury of murder, rape, kidnapping with bodily injury, aggravated sodomy and aggravated assault. The crime occurred in Montgomery County but venue was changed to Pulaski County. See OCGA § 17-7-150. Pruitt was sentenced to death for the murder.[1]

1. Pruitt lived with his half-brother Charles Loyd in a small trailer next door to Donnie Gene Walker and his family. Walker's daughter, Charise, was five years old.

Pruitt and his half-brother spent the afternoon of November 15, 1986 drinking with Donnie Gene's father and brother. Loyd brought Pruitt home and Pruitt testified that he went to sleep.

Late that afternoon, a nearby neighbor passed by the trailer and saw Pruitt sitting outside with Charise Walker in his lap. Later, another neighbor saw Pruitt carrying the little girl into some nearby woods.

Charise had been told by her father never to leave the yard. When he noticed she was missing, he called together his pastor, his friends and his neighbors and they began to search for the girl.

By now it was dark. Pruitt was seen exiting the woods, alone, wearing only a shirt. Donnie Gene Walker confronted him behind the trailer, and asked him if he had seen his daughter. Pruitt answered, "No, I don't do that kind of stuff." He explained that he had gone into the woods to use the bathroom and had lost his pants. (There was testimony that the trailer was without water.)

Walker left to search the woods for his daughter. The trailer was locked, so Pruitt climbed in through the back window and was putting on his pants when another member of the search party came up to the window to talk to Pruitt. He held on to Pruitt's arm while Pruitt's half-brother unlocked the trailer. Pruitt was asked again about the girl. He denied any knowledge of her disappearance, and claimed now that he had entered the woods to masturbate, and had lost his pants in the darkness. There was blood on his shirt, his hands, and his sex organ. He took off the shirt and gave it to one of the members of the search party.

Meanwhile, other members of the search party were in the woods,

---

[1] The crime occurred November 15, 1986. Pruitt was arrested for kidnapping on November 15, 1986, and charged with murder, rape, child molestation, aggravated battery, and aggravated assault on November 17, 1986. After a change of venue was granted, he was indicted in Montgomery County on November 24, 1986. The trial began on September 14, 1987, and he was sentenced to death on September 18, 1987. A motion for new trial was filed September 23, 1987, and denied December 15, 1987. The case was docketed in this court February 19, 1988, and the case was argued on April 12, 1988.

searching with flashlights. They spotted her clothes first, "hanging from a briar about twenty or thirty feet" from a place where "the leaves and all [on the ground] had been torn up."

William Sharpe described her location:

> She was kinda in a thicket like, with briars and bushes. . . . It looked like her clothes were thrown in and she was thrown in behind them.

At this point, she was still alive, although horribly injured. Danny Watts testified:

> When I got to the woods there was about four or five men standing around the little girl. I got between them — I got on my knees where she was at. She had blood running out of both ears. She had blood running out of her mouth and nose. She had been beaten up around the head. Her leg had a bone sticking up — not sticking through the skin but it was sticking up, you could see a big lump there.
>
> . . . I tried to keep the blood from running out of her ears. I kept wiping it. It was coming out of her mouth and nose. I kept wiping her, and the paramedics finally arrived.

Charise was taken to the hospital, but she died from her injuries. Dr. Larry Howard performed the autopsy. Her anus and her vagina had been penetrated by something consistent in size and shape with a male sex organ. Both the vaginal and the anal tracts were lacerated internally. Her leg was broken, and her face bore a pattern lesion that was "highly suggestive" of having been caused by a belt buckle. Her whole head had been subjected to "severe impact injury and her skull was fractured in two places." Dr. Howard testified that Charise died as the result of injuries to the head.

Pruitt was interrogated by law enforcement officers after his arrest. He admitted taking the girl into the woods and attempting to have sex with her but claimed that because of her small size he was unsuccessful. He admitted hitting her with his fist when she began screaming. At trial he claimed that he could not remember any of the events of the evening, and that his custodial statements were lies based on information supplied to him by others.

The evidence supports the conviction on all counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[2]

---

[2] Pruitt was not sentenced on the aggravated assault conviction, which the trial court found to have merged into the rape conviction. See OCGA § 16-1-7.

2. The commitment hearing was conducted before a Montgomery County magistrate on November 21, 1986. After the state rested, the defendant attempted to present the testimony of eleven state's witnesses, claiming a right to "fish all we want for the evidence." The state objected, stating:

[D]efense counsel has indicated that he has no . . . witnesses that would be relevant to this court's determination [of probable cause], that all he is on is a fishing expedition, and, therefore we would move this court to rule that probable cause has been established and bind him over to the Superior Court . . . .

The magistrate agreed, and committed the defendant. Three days later Pruitt was indicted. He thereafter filed a motion in the trial court seeking a "complete" commitment hearing. The motion was denied as moot, since Pruitt had by now been indicted. The trial court did not err. "It is now well settled that errors, if any, in a preliminary hearing will not, in and of themselves, afford grounds for relief when the defendant is subsequently indicted by a grand jury. [Cits.]" *Walker v. State*, 144 Ga. App. 838 (242 SE2d 753) (1978).

Moreover, OCGA § 17-7-23 (a) provides:

The duty of a court of inquiry is simply to determine whether there is sufficient reason to suspect the guilt of the accused and to require him to appear and answer before the court competent to try him. *Whenever such probable cause exists, it is the duty of the court to commit.* [Emphasis supplied.]

There is no general right to discovery in a criminal case, *Castell v. State*, 250 Ga. 776, 782 (301 SE2d 234) (1983), and nothing in OCGA § 17-7-28 creates one, see *Day v. State*, 237 Ga. 538, 539 (228 SE2d 913) (1976), or authorizes the defendant to go on a "fishing expedition" for evidence concededly beyond the scope of the real purpose of the commitment hearing. There was no error in the commitment hearing.

3. The trial court did not err by denying Pruitt's motion to suppress. Pruitt had no legitimate expectation of privacy in the articles of clothing he left in the woods. *Oliver v. United States*, 466 U. S. 170 (104 SC 1735, 80 LE2d 214) (1984). Since no law enforcement officers or other state officials were involved in the case when Pruitt's neighbors entered his trailer and obtained his shirt from him, the seizure of his bloody shirt by private parties did not implicate the Fourth Amendment, and the Fourth Amendment was not violated when the shirt was later turned over to law enforcement officers. *United States*

*v. Jacobsen*, 466 U. S. 109 (104 SC 1652, 80 LE2d 85) (1984). Finally, the evidence shows that Pruitt voluntarily consented to the taking of blood, hair and fingernail-scraping samples. There is no merit to his contention that there was not sufficient probable cause to justify his arrest. Compare *Florida v. Royer*, 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983); *United States v. Watson*, 423 U. S. 411 (96 SC 820, 46 LE2d 598) (1976).

4. Pruitt complains of the testimony of two witnesses, one of whom testified she saw Pruitt sitting on a car in his yard with the victim in his lap and later saw him exiting the woods alone and partially nude, and the other of whom testified she saw Pruitt carry the girl into the woods.

There were no pre-trial confrontations involving these two witnesses. Instead, their in-court testimony was " 'entirely based upon observations at the time of the [crime].' [Cit.]" *Neil v. Biggers*, 409 U. S. 188, 198 (93 SC 375, 34 LE2d 401) (1972). Compare *Rivers v. State*, 250 Ga. 303 (4) (298 SE2d 1) (1982). That it was dusk when the two witnesses saw Pruitt, that they did not know him personally, but only knew "of him" and had seen him "from time to time," and other such matters of credibility were proper subjects for cross-examination and closing argument, but did not warrant the exclusion of their testimony. *Jones v. State*, 258 Ga. 25 (3) (365 SE2d 263) (1988).

5. The court did not err by admitting selected photographs not in violation of the rule set forth in *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983). Nor did the court err by asking the autopsist to "explain to the Court exactly what it is that each picture will illustrate for the jury . . ." and by basing its ruling, in part, on the expert's answer.

6. There was no abuse of discretion in the court's denial of Pruitt's request that the state furnish proposed jury instructions 24 hours before trial. See OCGA § 5-5-24 (b); Rule 10.3 of the Ga. Uniform Superior Court Rules.

7. John Wegel, a forensic serologist at the state crime laboratory, testified that the fingernail scrapings from the defendant "were consumed in the analysis I made." His analysis showed the scrapings to be dried, type "A" human blood. (Pruitt had type "O" blood; the victim had type "A" blood.)

Pruitt filed a pre-trial "Motion to Suppress Physical or Scientific Evidence not Tested by Defendant." In his 6th enumeration of error, he contends the trial court erred by denying this motion and frames the issue as:

> When the state's scientific testing of evidence consumes all the particular evidence, therefore prohibiting the defendant from also testing it, does such loss deny the defendant's right

to confrontation or cross-examination and should the evidence of the test results be excluded?

Appellant's brief, p. 35.

Pruitt's brief provides no citation to the record where the trial court denied the motion. When the motion was argued at a pre-trial hearing, the state responded:

> [T]his is one of those motions that's best handled at trial because when we get to the point of offering that particular evidence then [Pruitt's attorney] would have to make a timely motion . . . I think it's premature for the court to entertain argument and authority at this particular point.

Transcript Hearing of August 19, 1987, p. 46.

The trial court did not rule on the motion at this hearing. Later, the court filed a written order disposing of most of Pruitt's pre-trial motions. Record, pp. 260-62. The one at issue here was not ruled upon. At trial, the defense did not object to any portion of the serologist's testimony, and Pruitt's attorney specifically responded to the state's proffer of its exhibit number 52 (the only tangible evidence relating to the fingernail scrapings) by stating: "I won't object to its admission."

We hold that the issue posed in this enumeration of error has not been preserved for appellate review. Compare *Baker v. State*, 250 Ga. 187 (2) (297 SE2d 9) (1982).

8. Pruitt received all discovery to which he was entitled. See *Ford v. State*, 256 Ga. 375 (2) (349 SE2d 361) (1986). The trial court did not err in its handling of Pruitt's requests for information and discovery.

9. "Georgia insanity laws are not constitutionally inadequate." *Hicks v. State*, 256 Ga. 715, 727 (16 C) (352 SE2d 762) (1987).

10. Since Pruitt is white, the trial court did not err by declining to address his claim that the prosecutor discriminated against blacks in the exercise of his peremptory challenges. *Skipper v. State*, 257 Ga. 802, 805 (5) (364 SE2d 835) (1988). Nor did the trial court err by allowing prospective jurors to be "death-qualified" on voir dire. Id. at 806-07; *Frazier v. State*, 257 Ga. 690 (4) (362 SE2d 351) (1987).

11. One prospective juror stated on voir dire: "[I]t seems to me that if he's guilty that I would be 98% in favor of the death penalty." Pruitt contends the trial court erred by denying his challenge to the juror. Compare *Pope v. State*, 256 Ga. 195 (7 e) (345 SE2d 831) (1986). However, the next morning, the trial court reconsidered its denial, and excused the prospective juror for cause. Any error in the court's initial ruling was harmless.

The court granted the state's challenge to another prospective juror after the juror testified that it would violate his religious beliefs to consider imposing a death sentence, and that he could not vote to impose a death sentence in any case. The court's ruling was proper. *Alderman v. State*, 254 Ga. 206 (4) (327 SE2d 168) (1985).

12. Pruitt's eleventh enumeration of error is answered by *Strickland v. State*, 250 Ga. 624, 626 (2) (300 SE2d 156) (1983), in which we stated:

> On appeal, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld unless clearly erroneous. *Crawford v. State*, 245 Ga. 89 (2) (263 SE2d 131) (1980). In view of the evidence presented at the Jackson-Denno hearing, . . . the trial court was authorized to find that the intoxication of Strickland did not render him unable to make both a knowledgeable waiver of his constitutional rights and a voluntary confession. See, *Fowler v. State*, 246 Ga. 256 (3) (271 SE2d 168) (1980).

13. Enumerations 17 through 24 complain of the court's refusal to give certain of Pruitt's requests to charge.

A requested charge should be delivered if it is a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given. *Horton v. State*, 249 Ga. 871, 874 (6) (295 SE2d 281) (1982); *Kelly v. State*, 241 Ga. 190 (4) (243 SE2d 857) (1978).

(a) Pruitt's requested charge numbers 21 and 23 were covered in substance by the court's general charge and the court's refusal to give these requested charges was not error.

(b) Since Pruitt raised no issue of insanity or mental illness, see Rule 31.4 of the Ga. Uniform Superior Court Rules, his requests to charge numbers 31 and 32 were not pertinent or material to an issue in the case.

(c) Request number 33 states, in part: "[O]ne voluntarily under the influence of alcohol, drugs or narcotics is presumed to intend the legitimate consequences of his act. . . ." Request number 51 states, in part: "I charge you that men are presumed to intend the natural consequences of their actions." Such instructions may have been permissible at one time, but not now. See *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). These requests to charge contained incorrect statements of law, and the trial court did not err by refusing to give them. *Frazier v. State*, 257 Ga. 690 (19) (362 SE2d 351) (1987).

(d) Pruitt's request to charge number 29 would have instructed

the jury to acquit unless "satisfied beyond a reasonable doubt as to the accuracy of the witness' identification of the defendant. . . ."

Identity was an essential element of the crimes for which Pruitt was on trial, and the jury was required to find from the evidence as a whole that each essential element of the crimes charged, including identity, had been proved beyond a reasonable doubt before it could convict Pruitt on all counts. However, Pruitt's requested charge on identity was inaccurate and misleading, and the trial court did not err by refusing to give it.[3]

(e) Pruitt requested a charge on child molestation as a lesser included offense of the rape charge. The offense of child molestation is defined in OCGA § 16-6-4 (a) as follows:

> A person commits the offense of child molestation when he does any immoral or indecent act to or in the presence of or with any child under the age of fourteen years with the intent to arouse or satisfy the sexual desires of either the child or the person.

The trial court refused to give this request on the ground that child molestation was not a lesser included offense of rape. However, we held recently that the offense of child molestation may be included as a matter of fact in an indictment charging the offense of rape, where the victim is under the age of 14. *Parker v. State,* 256 Ga. 543 (2) (350 SE2d 570) (1986). See *State v. Estevez,* 232 Ga. 316 (206 SE2d 475) (1974). Under *State v. Stonaker,* 236 Ga. 1 (3) (222 SE2d 354) (1976), the trial court should have given this request to charge, and the refusal to give it was error requiring the reversal of Pruitt's conviction for rape. *Parker v. State,* supra.[4]

(f) Our disposition of subdivision (e) above, renders moot Pruitt's contentions concerning the trial court's refusal to charge two additional offenses allegedly included in the offense of rape.

14. In enumerations of error 25 through 27, Pruitt contends the court erred by giving three of the state's requests to charge. However, at the conclusion of the court's charge, Pruitt's attorney was asked if

---

[3] If the jury had entirely disregarded the testimony of the two witnesses the reliability of whose testimony Pruitt has questioned, see Division 4 of the opinion, more than enough evidence existed to overwhelmingly identify Pruitt as the person who beat to death Charise Walker: Other people saw him in a partially unclothed state soon after the crime occurred; his missing clothes were found at the scene of the crime; he had blood on his hands, his shirt, and his sex organ; and he admitted taking the girl into the woods, attempting to have sex with her, and beating her.

[4] "By requesting the charge on the lesser offense, [Pruitt] waived any constitutional notice objections he might have had to a conviction for an offense included as a matter of fact. See *McCrary v. State,* 252 Ga. 521 (314 SE2d 662) (1984)." *Parker v. State,* supra at 549 (fn. 4).

he had any exceptions to the charge, as follows:

> The Court: Are there any exceptions to the charge from the state?
>
> Mr. Wiggins: None from the state.
>
> The Court: From the defendant? It is not necessary for you to repeat your exceptions to the fact the Court did not give *your* requests to charge. *Anything else?*
>
> Mr. Straughan [for the defendant]: I don't think so. [Emphasis supplied.]

Transcript, p. 1093.

If the trial court asks whether or not there are any objections to the charge, counsel must either state his objections or reserve his right to object on motion for new trial or on appeal. *Jackson v. State*, 246 Ga. 459 (271 SE2d 855) (1980). Here, as to the state's requests to charge, defense counsel did neither, and the contentions raised in these enumerations of error have not been preserved for appellate review. *Rivers v. State*, 250 Ga. 303 (7) (298 SE2d 1) (1982). Cf. *Wadley v. State*, 258 Ga. 465 (369 SE2d 734) (1988).

15. Since the rape conviction must be set aside in any event, see Division 13 (e) above, we need not address Pruitt's contention that, since the count of the indictment charging kidnapping with bodily injury specified rape as a bodily injury inflicted by the defendant upon his victim, the rape conviction merges into the conviction for kidnapping with bodily injury. We hold that there is no merger as to any of the remaining three counts for which Pruitt was sentenced, i.e., malice murder, kidnapping with bodily injury, and aggravated sodomy. See *Waters v. State*, 248 Ga. 355 (11) (283 SE2d 238) (1981).

### Sentence Review

16. The jury found the following statutory aggravating circumstances:

> The offense of murder was committed while the defendant was engaged in the commission of another capital felony, to wit: rape.
>
> The offense of murder was committed while the defendant was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury.
>
> The offense of murder was outrageously or wantonly vile,

horrible, or inhuman in that it involved torture and depravity of mind.

See OCGA § 17-10-30 (b) (2) and (b) (7). The evidence supports these findings. OCGA § 17-10-30 (c) (2). Whether or not the rape portion of the jury's § b (2) finding is valid, in view of our reversal of the rape conviction, the other findings are sufficient to support the imposition of the death penalty. Compare *Parker v. State,* supra, 256 Ga. at 551 (12).

17. The death sentence was not imposed under the influence of impermissible passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1).

18. The death sentence is justified by the circumstances of this crime, and is neither excessive nor disproportionate to sentences imposed in similar cases, considering the crime and the defendant. OCGA § 17-10-35 (c) (3).

19. The conviction for rape is reversed. The convictions for malice murder, kidnapping with bodily injury and aggravated sodomy are affirmed. The death sentence is affirmed.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

DECIDED OCTOBER 20, 1988

*Straughan & Straughan, Mark W. Straughan,* for appellant.

*James L. Wiggins, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.

APPENDIX.

*Crawford v. State,* 257 Ga. 681 (362 SE2d 201) (1987); *Parker v. State,* 256 Ga. 543 (350 SE2d 570) (1986); *Devier v. State,* 253 Ga. 604 (323 SE2d 150) (1984); *Allen v. State,* 253 Ga. 390 (321 SE2d 710) (1984); *Felker v. State,* 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982); *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980); *Cape v. State,* 246 Ga. 520 ( 272 SE2d 487) (1980); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979); *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Gibson v.*

*State*, 236 Ga. 874 (226 SE2d 63) (1976).