## S89P0388. PITTS v. THE STATE.

(386 SE2d 351)

MARSHALL, Chief Justice.

The defendant, James L. Pitts, was convicted by a jury in Carroll County of murder, kidnapping, rape, and theft by taking. He was sentenced to death on the murder count. We affirm.[1]

### Facts

Pitts was released from the Floyd County Correctional Institute at 6:00 a.m. on August 20, 1988, and transported to the bus station by one of the correctional officers. Pitts had in his possession a bus ticket to Atlanta, a 25-dollar check from the state, and some personal items from his cell. He was wearing a striped shirt and a pair of blue jeans.

Pitts cashed his check later that morning at a grocery store. He was seen several times in the area throughout the day. The victim, Barbara Roser, worked near where Pitts was seen at 4:00 p.m. She got off work at 4:30, and was last seen walking to her car in a parking lot.

A witness who worked in the area testified that as he was walking to his car about 4:30 that afternoon, he saw the victim's car exiting the parking lot driven by a man who appeared to be alone. He identified the defendant in court as the man he saw driving the victim's car.

As another witness was driving toward town at 5:00 p.m., she saw a small brown car occupied by a man and a woman traveling away from town. At 6:30 p.m., she saw the same car parked down a dirt road, apparently stuck. She returned home, and her husband and brother-in-law went to help. When they did, they found an empty car and the semi-nude body of Barbara Roser lying in the mud beside it.

A man wearing a striped shirt carrying a brown umbrella was seen that evening not far from where the victim's body was found.

Sometime after 10:00 p.m., Pitts ate dinner at a restaurant, using the victim's Discover credit card. Pitts later used the same credit card

---

[1] The crime was committed in Floyd County on August 20, 1988. Pitts was tried on an indictment filed on September 9, 1988. On April 5, 1989, a change of venue was ordered. The case was tried in Carroll County May 3 through May 12, 1989. A notice of appeal was filed June 7, 1989. After the court reporter was granted an extension of time to prepare the transcript, the record was docketed in this court on August 8, 1989. The appellee was granted another extension of time to file its briefs, and oral arguments were heard on November 14, 1989.

to make purchases at a jewelry store, a department store, a shoe store, the bus station, and a motel. He was arrested on August 22, 1988, wearing a new suit.

Pitts told police that he did not commit the crime himself, but witnessed it, and he claimed the killer was a man named John Brown. He claimed Brown paid him to use the victim's credit card; however, he admitted he had used the card to buy things only for himself.

The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Pitts was indicted on August 30, 1988. On September 9, 1988, he was re-indicted by the same grand jury on an amended indictment to which recidivist counts had been added. Pitts argues the second indictment should have been dismissed because the grand jury, having already heard the evidence once, was biased when it considered the second indictment. This contention is without merit. *Creamer v. State*, 150 Ga. App. 458 (1) (258 SE2d 212) (1979). See also *Isaacs v. State*, 259 Ga. 717 (2 a) (386 SE2d 316) (1989).

2. Pitts contends his arrest was not supported by probable cause.

Officer Shiflett testified that by the early afternoon of August 22, 1988, Pitts was a suspect. He learned that Pitts was traveling toward the bus station wearing a new suit. He already knew that someone fitting Pitts' description had been using the victim's credit card to buy clothing, and he also knew Pitts had been in the area of the crime.[2] Officer Shiflett went to the bus station and discovered that a man fitting Pitts' description had purchased a bus ticket to New Orleans using the victim's credit card. The bus had already left. Shiflett determined that the bus would reach Marietta, Georgia, at 4:20 p.m. Shiflett testified that there was insufficient time to find a magistrate to obtain an arrest warrant, and he sent officer Studdard to Marietta to make a warrantless arrest.

The arrest was supported by probable cause, and was constitutionally valid. *Johnson v. State*, 258 Ga. 506, 507 (2) (371 SE2d 396) (1988).

3. The defendant was not entitled to a post-indictment committal hearing. *Cargill v. State*, 255 Ga. 616 (1) (340 SE2d 891) (1986). See also *Pruitt v. State*, 258 Ga. 583 (2) (373 SE2d 192) (1988).

4. Pitts was interrogated the evening of August 22, 1988. He was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), signed a written waiver form, and agreed to talk to officer Studdard.

Pitts described his whereabouts and activities since his release

---

[2] Pitts had been detained and questioned briefly the evening of August 20, but released because the man they were looking for was supposed to have been carrying an umbrella, and by the time Pitts was questioned on August 20, he had disposed of the umbrella.

from the correctional institute. He claimed a man whose name he would not "call" until he was "around a lawyer" had offered to furnish him clothes and money if he would deliver a package to New Orleans. He also "signed" a motel receipt for the man. He denied ever being in the victim's car or knowing anything about the murder, except for things he had overheard. After he talked at length about his activities, the police told him they had evidence he was present at the scene of the murder, contrary to what he was telling them. At this point, Pitts asserted his right to counsel, stating, "[if] you want me to tell you a statement, now I got to have a lawyer." The interview was terminated.

Pitts was taken into the detective room and left in the custody of police sergeant Rickman, who was told Pitts had requested an attorney and no one was to talk to him. Rickman was working on some unrelated juvenile cases. After a few minutes, Pitts leaned over to officer Rickman and said, "I didn't do it." Rickman answered, "You didn't?" Pitts stated, "I didn't kill her . . . but, I know who did kill her."

Rickman told Pitts he could not talk to him because he had requested an attorney. Pitts stated he would talk anyway.

Pitts was advised again of his *Miranda* rights by officer Shiflett, who testified that he wanted to "make sure that [Pitts] understood . . . that he had previously asked for a lawyer and it had to be up to him to make this second statement. . . ."

Pitts then gave a second statement admitting he was present.at the scene of the murder. He claimed that John Brown had stopped to give him a ride and the victim was in the car. He claimed she said "I like you . . . [and] I want to be with you," and that they had sexual intercourse in the back seat of the car. She rejected Brown, who "shot hisself [sic] [up] again with some more dope." Later, while Pitts was trying to get the car unstuck, Brown struck the woman on the head with a piece of pipe. Pitts, scared by Brown's behavior, left. (However, he also claimed to have spent much of the rest of the weekend with Brown.)

(a) Pitts contends his statements should have been suppressed because the police continued their interrogation after he asserted his right to counsel. He contends he asserted his right to counsel early in the first interrogation when he stated he would not name his alleged accomplice until he was "around a lawyer."

If an accused

> expresse[s] his desire to deal with the police only through counsel, [then he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication,

exchanges, or conversations with the police. [*Edwards v. Arizona*, 451 U. S. 477, 484-85 (101 SC 1880, 68 LE2d 378) (1981).]

However, a defendant may make a limited request for counsel, which the police are "required to honor to no greater extent than the express limits of his reservation. *Connecticut v. Barrett*, 479 U. S.____ (107 SC 828, 93 LE2d 920) (1987)." *Ford v. State*, 257 Ga. 461, 466 (6) (360 SE2d 258) (1987). In *Connecticut v. Barrett*, the defendant told police he would not give the police a *written* statement unless an attorney was present, but was willing to *talk* to the police without an attorney. In *Ford v. State*, the defendant insisted he would not make any video-taped statements in the absence of an attorney, but was willing to talk to the police without one. As in these two cases, we find that the defendant here made a limited request for counsel: He did not want to identify the person who allegedly was involved in the case without consulting an attorney, but he was willing to discuss all other matters with the police. This limited request did not require the cessation of the interrogation. Later, when the defendant did assert his desire for an attorney, the interrogation stopped.

(b) After Pitts invoked his right not to identify the other alleged participant, he was asked twice more to identify the person. He refused to do so both times.

Pitts contends that even if his assertion early during the first interrogation was only a limited request for counsel, the police should not have continued to ask him about the subject matter as to which he had requested an attorney. We agree. However, we find that the failure to exclude this portion of the statement is harmless beyond a reasonable doubt. Compare *Foster v. State*, 258 Ga. 736 (8) (374 SE2d 188) (1988).

(c) The second interrogation occurred only after Pitts himself initiated further conversations with the police. There was no *Miranda* error here. *Edwards v. Arizona*, supra.

5. In light of the defendant's statements, evidence of two similar crimes was properly admitted for the purpose of tending to prove intent. *Maggard v. State*, 259 Ga. 291 (2) (380 SE2d 259) (1989); *Frazier v. State*, 257 Ga. 690 (16) (362 SE2d 351) (1987).

6. Pitts contends it was error to admit in evidence statements given by him to a Florida probation officer concerning the two extrinsic crimes discussed above. His only objection at trial was that he was not given *Miranda* warnings.

Pitts had already entered his plea of guilty to both crimes and had been sentenced for one of them, when he talked to the probation officer. His statements were not inadmissible for absence of *Miranda* warnings. Cf. *Minnesota v. Murphy*, 465 U. S. 420 (104 SC 1136, 79

LE2d 409) (1984).

7. The court's rulings during voir dire on the qualifications of prospective jurors were "within the deference due the trial judge's determination." *Jefferson v. State*, 256 Ga. 821, 824 (2) (353 SE2d 468) (1987). See also *Kent v. State*, 179 Ga. App. 131 (345 SE2d 669) (1986).

8. The state used its peremptory challenges to strike four black prospective jurors. One black was selected as a juror, and another was an alternate juror. Pitts timely raised the issue of racial discrimination in the prosecution's exercise of peremptory challenges. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). We hold that, even assuming the defendant made out a prima facie case, the trial court was authorized to find that it was successfully rebutted by the state.

Three of the challenged jurors were opposed to, or very reluctant to impose, a death sentence. One of these three, in addition, had a history of assault and battery. The fourth prospective juror was struck because of her extensive family criminal history, including a brother who had been charged with rape, and convicted on cocaine and forgery charges.

We note that white prospective jurors were struck for similar reasons. Compare *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987). The trial court's finding that the prosecutor's challenges were not racially motivated is not clearly erroneous in this case. *Foster v. State*, 258 Ga. 736 (2) (374 SE2d 188) (1988).

9. The trial court did not abuse its discretion in admitting photographs of the victim. *Hicks v. State*, 256 Ga. 715, 720 (13) (352 SE2d 762) (1987).

10. Reliable evidence of criminal conduct by the defendant may be admitted in evidence at the sentencing phase of a death-penalty trial even if the defendant has not been convicted of a crime arising out of that conduct, so long as he has not been acquitted. *Moon v. State*, 258 Ga. 748, 758 (29 a) (375 SE2d 442) (1988). See also *Potts v. State*, 259 Ga. 96 (14) (376 SE2d 851) (1989); *Jefferson v. State*, 256 Ga. 821, 827-828 (8 b) (353 SE2d 468) (1987). Moreover, where, as here, the defendant was allowed to enter a plea to a lesser charge in the case sought to be admitted, the state may offer not only the conviction, but also the testimony of the victim of the crime to prove the commission of the greater offense. *Potts v. State*, supra. Accord *Richardson v. Johnson*, 864 F2d 1536 (v) (11th Cir. 1989); *Williams v. Lynaugh*, 814 F2d 205 (5th Cir. 1987); *Tucker v. Kemp*, 762 F2d 1480, 1487 (11th Cir. 1985).

11. Pitts' request to charge number 13 was sufficiently covered by the court's general charge, and it was not error to refuse to deliver it.

12. Another request to charge, inter alia, that "the death penalty

cannot be imposed against a party who only aids and abets another in the murder . . ." was not a correct statement of law, and the court did not err by refusing to give it. *Pruitt v. State*, 258 Ga. 583 (13) (373 SE2d 192) (1988). See *Tison v. Arizona*, 481 U. S. 137 (107 SC 1676, 95 LE2d 127) (1987). Compare *Cargill v. State*, 255 Ga. 616 (32) (340 SE2d 891) (1986).

13. Pitts contends it was error to allow the jury to consider a pre-sentence report at the sentencing phase of the trial.

As noted above, in Div. 6, ante, a Florida probation officer testified at the guilt phase of the trial about statements the defendant made to him while he was preparing a pre-sentence report. The report itself was not admitted in evidence, and the probation officer was available for cross-examination. Hence, this case is not like *Gardner v. Florida*, 430 U. S. 349 (97 SC 1197, 51 LE2d 393) (1977), where a death sentence was imposed, in part, on the basis of information contained in a confidential pre-sentence report which was not disclosed to the defendant or his attorney, and which the defendant did not have the opportunity to deny or explain.

The jury was authorized to consider this testimony at the sentencing phase of the trial. *Spivey v. State*, 241 Ga. 477, 481 (246 SE2d 288) (1978).

14. Expert testimony concerning a defendant's future dangerousness is not, as the defendant contends, constitutionally barred. *Barefoot v. Estelle*, 463 U. S. 880 (103 SC 3383, 77 LE2d 1090) (1983).

15. Evidence and argument concerning the defendant's criminal record did not violate OCGA § 17-8-76. *Felker v. State*, 252 Ga. 351, 383 (19) (314 SE2d 621) (1984).

16. Pitts did not object to testimony by the victim's husband and daughter, nor to the prosecutor's closing argument. Hence, we need not address his present claim that there was a violation of *Booth v. Maryland*, ___ U. S. ___ (107 SC 2529, 96 LE2d 440) (1987). See *Cohen v. State*, 257 Ga. 544, 547 (361 SE2d 373) (1987). However, were we to address the issue, we would not agree that the testimony in this case was improper. The testimony of these two witnesses served to identify the victim and her activities and whereabouts the day she was murdered, and was relevant to prove the crime. *Moon v. State*, 258 Ga. 748, supra (16).

17. One of the possible statutory aggravating circumstances listed on the verdict form was that the murder was committed by a person with a prior record of conviction for kidnapping with bodily injury. OCGA § 17-10-30 (b) (1). Pitts contends this statutory aggravating circumstance was not supported by the evidence. Assuming he is correct, any error is harmless, since the jury did not return a finding of this statutory aggravating circumstance.

18. During his sentencing-phase closing argument, the prosecutor

told the jury that in determining whether the defendant's admitted act of sexual intercourse was rape rather than consensual sex, the jury could consider the defendant's conduct in similar crimes. We do not agree with the defendant that this argument was inaccurate or misleading.

19. There was no error in the court's instructions on mitigating circumstances. *Romine v. State,* 251 Ga. 208 (10) (305 SE2d 93) (1983). Nothing in the court's instructions can reasonably be construed as creating a "presumption" that death is the appropriate punishment. *Ford v. State,* 257 Ga. 461, 464 (360 SE2d 258) (1987). More specifically, merely telling the jury, consistent with OCGA §§ 17-10-2 (c) and 17-10-30 (c), that the two possible verdicts are "death," on the one hand, and "mercy," on the other, does not create such a presumption.

20. It was not error to tell the jury that its verdict must be unanimous. *Romine v. State,* 256 Ga. 521 (2) (350 SE2d 446) (1986).

21. The jury found as a statutory aggravating circumstance that the offense of murder was committed while the offender was engaged in the offense of rape. OCGA § 17-10-30 (b) (2). The defendant admitted having sexual intercourse with the victim, and semen was found in fabric taken from the back seat of the victim's car, on her underwear, and in her vaginal tract. The jury was authorized to find that the defendant raped the victim, and the evidence supports its finding of the § (b) (2) aggravating circumstance. OCGA § 17-10-35 (c) (2).

22. The sentence of death was not imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-30 (c) (1). We do not find it excessive or disproportionate to penalties imposed in similar cases, considering the crime and the defendant. OCGA § 17-10-30 (c) (3). The similar cases in the Appendix support the death penalty.

*Judgment affirmed. All the Justices concur.*

### APPENDIX.

*Williams v. State,* 258 Ga. 281 (368 SE2d 742) (1988); *Ford v. State,* 255 Ga. 81 (335 SE2d 567) (1987); *Alderman v. State,* 253 Ga. 390 (321 SE2d 710) (1984); *Finney v. State,* 253 Ga. 346 (320 SE2d 147) (1984); *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982); *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980); *Stevens v. State,* 245 Ga. 583 (266 SE2d 194) (1980); *Burger v. State,* 245 Ga. 458 (265 SE2d 796) (1980); *Hardy v. State,* 245 Ga. 272 (264 SE2d 209) (1980); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979);

*Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Morgan v. State,* 241 Ga. 485 (246 SE2d 198) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978).

DECIDED DECEMBER 5, 1989 —
RECONSIDERATION DENIED DECEMBER 20, 1989.

*W. Gene Richardson, James R. McKay,* for appellant.
*Stephen F. Lanier, District Attorney, Michael J. Bowers, Attorney General,* for appellee.