## 43211. PARKER v. THE STATE.
(350 SE2d 570)

BELL, Justice.

This is the second appearance of this death penalty case. Previously, we remanded the case to the trial court for further proceedings regarding the admissibility of Parker's confession. In addition, we deferred consideration of some of the enumerations of error "until such time as the case may reappear before us." *Parker v. State,* 255 Ga. 167, 169 (336 SE2d 242) (1985). The issues on the present appeal include the trial court's ruling on voluntariness after remand and the issues raised previously but not dealt with.[1]

*Facts*

The 11-year-old victim in this case disappeared on June 1, 1984. Foul play was soon suspected. Law enforcement officers questioned a number of persons residing in the trailer park where the victim had lived — including Parker, who was questioned on June 5, and again on June 6. He signed a consent-to-search form on June 6. Officers searched Parker's house on June 6, but found nothing relating to any possible criminal activity except for a small amount of marijuana.

Because Parker's statements regarding his whereabouts at the

[1] The trial court issued its order, after remand, on February 12, 1986. The case was redocketed in this court on February 19, 1986, and was orally argued April 15, 1986.

time the victim disappeared were not entirely consistent, and because the investigators learned that Parker had earlier been charged in an incident involving a young girl in Florida, they began to focus their attention on Parker as a suspect. Parker was asked if he would be willing to take a polygraph examination the next day (June 7). Although Parker assented to the test, he failed to show up for the examination.

Parker had been convicted earlier on felony charges and was placed on probation in Fulton County on May 15, 1984. The probation was transferred to Douglas County that day, and he was scheduled to meet with his assigned Douglas County probation officer on June 1. He failed to appear then, but he did meet his probation officer on June 5, and asked for permission to leave the state.

After Parker failed to appear for the polygraph examination on the morning of June 7, two warrants were issued for his arrest; one charged him with the misdemeanor offense of possession of less than an ounce of marijuana, and the other was for violation of the terms and conditions of his probation in that he "failed to appear as directed to the Douglas County Probation Office."

Parker was arrested on these warrants. After talking further with law enforcement officers, he told them he would take a polygraph examination, provided that he was allowed to talk to his attorney beforehand.

Parker had called an attorney prior to his arrest and had made arrangements to meet him that day. Now Parker called him again, and the attorney met him at the FBI Atlanta office, where the examination was to take place.

The attorney (who did not represent the defendant at trial) testified that he told Parker that Parker could not be required to take the test, but Parker answered that if he did not, his probation would be revoked and he would be "put in jail for five years . . . on that marijuana charge." The attorney testified that he then talked to the sheriff, who "indicated" to him that if "Parker could clear himself at that particular time with this polygraph test, . . . he could go on home."

The attorney testified that he discussed the situation with Parker, who adamantly denied any involvement in the disappearance of the girl. They agreed, then, that Parker should go ahead and take the examination.

As the attorney left, he indicated "to them that I was not going to sit in on this, I would be at my home, and as soon as this is completed for someone to call me."

The sheriff confirmed that he had discussed the marijuana warrant with the attorney. He testified that he told the attorney, "I can't promise you anything, . . . but if this young man passes the test . . . I'll go to the district attorney and ask him, you know, explain to him

the situation and ask him to cause the warrant to be dismissed." He denied discussing the probation warrant, and denied threatening Parker with five years of prison if he refused to take the examination. He explained that the probation warrant was issued from another county, and that it was for failing to appear according to the terms and conditions of his probation, and that the sheriff therefore had no control over that situation.

Parker took the polygraph examination. The examiner wanted to conduct another test before he could come to any final conclusions, but the examiner did tell the sheriff that, notwithstanding his answers, Parker knew where the body was.[2]

Parker was returned to Douglas County. He talked briefly to a couple of law enforcement officers, and then Parker was allowed to talk to his mother and two sisters, for about half an hour. Afterwards, he was again given Miranda warnings and the interrogation resumed.

The sheriff testified that, in accordance with the attorney's request, he and Parker attempted to call the attorney, at his office and at his home. He testified: "[Parker] tried, you know, one or more times. I tried several times because Parker was being interviewed, and I did not reach [the attorney] until after I had discovered the remains of [the victim]. So it could have been 2:00 or 3:00 o'clock in the morning, but I had tried up to near midnight at both numbers and failed to reach him." The state asked the sheriff whether the attorney had ever asked or directed the sheriff to refrain from talking to Parker. The sheriff answered that he had not.

At approximately midnight, Parker admitted responsibility for the victim's disappearance, and agreed to reveal the location of the body. He drew a map, which law enforcement officers used to find the body. Afterwards, Parker was interrogated again; this time the confession was tape-recorded.

### Enumerations of Error

1. Parker raises a number of issues relating to the admissibility of the confession.

(a) He argues that the search of his home was unsupported by probable cause and was therefore illegal. However, Parker consented to the search after being advised of his rights, and signed a consent-to-search form. The record fully supports a finding that the consent

---

[2] This testimony, as well as other testimony relating to the polygraph examination, was presented in a pre-trial *Jackson-Denno* hearing. No testimony relating to the polygraph examination or the conclusions of the examiner was presented to the jury. Absent agreement by the parties, the opinions of a polygraph examiner are not admissible at trial. *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977).

to search was valid. See *Scott v. State,* 253 Ga. 147 (317 SE2d 830) (1984).

(b) Parker argues vigorously that his arrest was illegal. However, it is plain from the record that probable cause supported the warrant issued for possession of marijuana, and that Parker had violated the terms and conditions of his probation. Even if, as Parker contends, the real interest of the relevant authorities was to keep Parker from fleeing the state before the murder investigation could be completed,[3] we are aware of no constitutional rule that such an interest invalidates an otherwise legally appropriate arrest. See *Devier v. State,* 253 Ga. 604 (5 b) (323 SE2d 150) (1984).

(c) Next, Parker contends that the rule of *Edwards v. Arizona,* 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981) was violated.

*Edwards* holds that if an accused asserts his right to counsel under *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), that is, if he "expresse[s] his desire to deal with police only through counsel, [then he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police." *Edwards,* supra, 451 U. S. at 484-85.

Plainly, the defendant invoked his right to counsel prior to taking the polygraph examination. In accordance with *Edwards,* Parker was provided an opportunity to consult with his attorney prior to any interrogation (including the polygraph examination), and after the consultation with his attorney, Parker "initiate[d] further communications" with the law enforcement officers when he agreed to take the examination. Parker's argument that his pre-examination invocation of his right to counsel precluded a post-examination interrogation is answered by *Wyrick v. Fields,* 459 U. S. 42 (103 SC 394, 74 LE2d 214) (1982). The real question here is whether Parker re-invoked his right to counsel *after* the completion of the examination. If he did, then further interrogation would be barred, unless initiated by Parker.

It is undisputed that Parker and the sheriff tried to contact Parker's attorney after the completion of the examination, in compliance with the attorney's request. The question is whether Parker thereby expressed a desire to deal with the law enforcement officers only through counsel, and to remain free of further interrogation until he had an opportunity to talk with his attorney. We find that Parker did not unambiguously and unequivocally assert such a desire. Compare *Smith v. Illinois,* 469 U. S. ___ (105 SC 490, 83 LE2d 488) (1984). He obviously knew how to invoke clearly his right to counsel,

---

[3] This is almost certainly the case with respect to the marijuana charge. However, the deputy director of the Fulton County probation office testified that the probation warrant would have been issued in any event.

and had done so, prior to the examination. Moreover, before any further interrogation, and on more than one occasion during the subsequent interrogation, he was informed of his *Miranda* rights, including his right to have counsel present and to stop the interrogation at any time. At no time did Parker ask that the interrogation cease, or that it be halted until he could consult with his attorney.

We find no violation of *Edwards v. Arizona*, supra. See *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985).

(d) Parker further contends that his agreement to take the polygraph examination was coerced and that all subsequent statements were tainted by the coercion so as to render them unusable by the state. See *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963).

The attorney whom Parker had consulted prior to the examination testified that when he talked to Parker at the FBI office, Parker told him that he had been threatened with the revocation of his probation if he refused the test; however, the attorney did not testify that he had heard such a threat himself, and the sheriff in his testimony vehemently denied making any threats or promises in regard to Parker's probationary status. Parker did not testify.

The trial court was authorized to conclude from this record that no threats or promises were made regarding the probation warrant.

The sheriff admitted, however, that he had promised to speak to the district attorney about dropping the marijuana charge if Parker took the test and "passed it." The evidence in this regard is undisputed.

The question here, then, is whether this promise of a benefit in case Parker took and passed the test, or, viewed conversely, the implicit threat of prosecution on the marijuana charge if he refused the test, amounted to the kind of coercion or improper inducement as would require the exclusion from evidence of any or all confessions made by Parker. We conclude that the answer is no.

First of all, the sheriff made no promises to induce a *confession*; Parker was to receive the promised benefit only if he successfully denied the crime, not if he admitted it. Compare OCGA §§ 24-3-50 and 24-3-51; *Williams v. State*, 239 Ga. 327 (236 SE2d 672) (1977).

Moreover, Parker made no inculpatory statements during the polygraph examination, or, at least, none that were admitted in evidence during the trial. Thus, insofar as the polygraph examination itself is concerned, there is nothing to suppress.

Even if the proffered benefit — coupled with the defendant's knowledge that the charges on which he was being held probably would not have been pursued if he had not been a murder suspect planning to leave the state — amounted to an improper inducement under OCGA §§ 24-3-50 and 24-3-51, it did not amount to such coer-

cion as would render Parker's agreement involuntary under the federal constitution. We note that in virtually any case in which a suspect is asked to take a polygraph examination, he will face a situation in which his refusal to take the test will very possibly add to whatever suspicion the investigators may already have that the suspect is guilty, and thus increase the prospects for his prosecution, while taking and "passing" the test will contribute significantly to the elimination of suspicion, thus decreasing the likelihood that he will be prosecuted. While the psychological pressure on Parker was incrementally greater than the usual case of a request to take a polygraph, we do not see that it was so much greater as to amount to unconstitutional coercion, at least where the state, as here, clearly had appropriate grounds to revoke his probation and to prosecute him for possession of marijuana. Compare *Stein v. New York*, 346 U. S. 156 (73 SC 1077, 97 LE 1522) (1953) (confession by defendant conditioned upon promise by police to drop charges against father and not prosecute brother for parole violation was not coerced).

We find nothing in the manner in which the sheriff elicited Parker's agreement to take the test that tainted the investigatory process so as to render ineffective Parker's subsequent waiver of his *Miranda* rights and his decision to confess after he was returned to Douglas County. The trial court did not err by finding Parker's confessions to have been voluntary under *Miranda v. Arizona*, supra. See *Oregon v. Elstad*, 470 U. S. ___ (105 SC 1285, 84 LE2d 222) (1985); *Martin v. Wainwright*, 770 F2d 918 (11th Cir. 1985).

e. Finally, we find no Sixth Amendment error. No confessions were elicited after the initiation of adversary judicial proceedings, and *Brewer v. Williams*, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977), and its progeny are therefore inapposite. See *Ross v. State*, 254 Ga. 22 (3 B) (326 SE2d 194) (1985).

2. In his 15th enumeration of error, Parker contends the trial court erred by refusing to give his written request to charge on child molestation as a lesser included offense of Count 2 of the indictment which charged him with the offense of rape. We must agree.

"An accused may be prosecuted for both rape and child molestation based upon the same conduct, but he may not be convicted of both." *Lamar v. State*, 243 Ga. 401, 403 (3) (254 SE2d 353) (1979). As we noted in our previous opinion, Parker at first admitted, then denied raping the victim. *Parker v. State*, supra, 255 Ga. at 169. He admitted fingering the victim's genitalia. See OCGA § 16-6-4 (defining the offense of child molestation). Although the evidence was sufficient to support a conviction for rape, a rational trier of fact could have found on this evidence that Parker was not guilty of rape, but guilty of the lesser offense of child molestation. The trial court erred by refusing to give Parker's request to charge the lesser offense of

child molestation. The conviction for rape must be reversed. *State v. Stonaker*, 236 Ga. 1 (3) (222 SE2d 354) (1976).[4]

3. Contrary to Parker's 4th enumeration, death-qualification of prospective jurors is not unconstitutional. *Pope v. State*, 256 Ga. 195 (7 a) (345 SE2d 831) (1986).

4. We find no merit to Parker's contention that the state's notice of evidence in aggravation was not timely provided. See *Cook v. State*, 255 Ga. 565 (14) (340 SE2d 891) (1986); *Ross v. State*, supra, 254 Ga. at 30-31.

5. In his 3rd enumeration, Parker complains of the court's failure to excuse four prospective jurors for bias in favor of the death penalty. One of these jurors was not challenged, and the court did not err by failing to excuse the juror on its own motion. *Spivey v. State*, 253 Ga. 187, 194 (319 SE2d 420) (1984). The other three are not shown on this record to have been so biased as to have required their excusal. Compare *Pope v. State*, supra, Division 7 (e).

6. Parker has failed to demonstrate that the funds provided for expert testimony concerning his mental condition were insufficient. See *Lindsey v. State*, 254 Ga. 444 (330 SE2d 563) (1985).

7. Having opened the door to the issue of his prospects for parole on direct examination of a defense witness, Parker cannot complain of the state's cross-examination of the witness in this regard. See *Felker v. State*, 252 Ga. 351 (18) (314 SE2d 621) (1984). Enumeration 8 is without merit.

8. We cannot agree with Parker's contention that the evidence is insufficient to support the jury's finding of the § (b) (2) aggravating circumstance that the murder was committed during the offense of kidnapping with bodily injury. See OCGA § 17-10-30 (b) (2).

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). If, in addition, the defendant inflicts any bodily injury, he is guilty of kidnapping with bodily injury. *Waters v. State*, 248 Ga. 355 (10) (283 SE2d 238) (1981).

Even if the victim initially accompanied Parker willingly, under the mistaken belief that he was going to take her to her brother's high school graduation ceremony, the situation clearly changed. Investigator Ingram testified that Parker confessed to him that "he told the [victim] to walk down a trail, it would take them to where she wanted to go. He said getting halfway down the trail is when he told me that she knew something was wrong. He said he looked at her face and he

---

[4] By requesting the charge on the lesser offense, Parker waived any constitutional notice objections he might have had to a conviction for an offense included as a matter of fact. See *McCrary v. State*, 252 Ga. 521 (314 SE2d 662) (1984).

knew at that time that she knew that she was not going to the high school, that she was in serious trouble. And then he *forced her down the remaining part of the trail* to an area. And he said he began choking her and taking her clothes off. He said when he choked her he became excited, and then ran around as she was on her knees looking for something to choke her with besides his hands. And he said he found this cord there, and he came back, and he wrapped it around her neck and choked her." (Emphasis supplied.)

Parker's confession establishes the commission of a kidnapping with bodily injury, and is corroborated by evidence establishing the location and appearance of the victim's body.

Enumeration 11 is without merit.

9. The court did not err by refusing to charge: "A mitigating circumstance does not have to be proven beyond a reasonable doubt to exist. You must find that a mitigating circumstance exists if there is any substantial evidence to support it."

While it is true that a mitigating circumstance does not have to be proven beyond a reasonable doubt to exist, a jury is required neither to accept as true a factual circumstance simply because substantial evidence supports it, nor to find that such a factual circumstance mitigates the offense. For example, substantial evidence that a defendant was under the influence of drugs may be rebutted by substantial evidence that he was not, and, depending upon the circumstances, his voluntary use of drugs may well be viewed as aggravating, and not mitigating, the crime.

Enumeration 12 is without merit.

10. In his 14th enumeration, Parker complains for the first time of two portions of the prosecutor's closing argument.

We find no improprieties so serious as to require the reversal of this case in the absence of any timely objection to the state's argument. See *Ford v. State*, 255 Ga. 81 (8 i) (355 SE2d 567) (1985); *Walker v. State*, 254 Ga. 149 (14) (327 SE2d 475) (1985).

11. Parker filed a written request to charge that was taken verbatim from the Appendix to *West v. State*, 252 Ga. 156 (313 SE2d 67) (1984), wherein we set forth a proposed charge on the § b (7) statutory aggravating circumstance. See OCGA § 17-10-30 (b) (7). At the bottom of Parker's request to charge was a citation to *West v. State*, supra. In addition, there is a reference to this suggested charge, accompanied by a citation to *West*, in the checklist to the Unified Appeal Procedure, in Section III (B) (7) (c). Georgia Unified Appeal Procedure, 252 Ga. A-13, A-47.

Notwithstanding these readily-available references, the state objected to the requested instruction on the ground that it was "totally argumentative." The court agreed, and refused to give it.

Contrary to the state's belief, the requested charge is appropriate

in a death penalty case in which the state is contending that the murder involves all three subparts of the second component of § b (7). *West v. State*, supra at 160. The trial court, on request, should have given it or something substantially similar.

### Sentence Review

12. The jury found the § b (7) statutory aggravating circumstance (the murder was "outrageously and wantonly vile, horrible and inhuman in that it involved: (A) torture to the victim; (B) depravity of mind; (C) an aggravated battery to the victim") and two aspects of the § b (2) circumstance (the murder was committed while the offender was engaged in the commission of the capital felonies of rape and kidnapping with bodily injury). See OCGA § 17-10-30 (b) (2) and (b) (7).

The evidence supports all three findings. However, in view of the court's erroneous refusals to give defendant's requests to charge on the § b (7) circumstance at the sentencing phase, and on the lesser offense of child molestation at the guilt phase (with the resultant reversal of the rape conviction), we assume that neither the § b (7) finding nor the rape aspect of the § b (2) finding would suffice to allow the imposition of a death sentence. However, the jury's finding of the kidnapping-with-bodily-injury aspect of the § b (2) circumstance is unaffected by the aforementioned errors, and is sufficient to allow the case to "pass the second plane into that area in which the death penalty is authorized." *Zant v. Stephens*, 250 Ga. 97, 100 (297 SE2d 1) (1982). "Once beyond this plane, the jury was authorized to consider all the facts and circumstances of the case . . . ," *Davis v. State*, 255 Ga. 588, 595 (340 SE2d 862) (1986), here, that Parker abducted an 11-year-old girl, marched her into the woods, undressed and sexually abused her, choked her first with his hands and then with an electrical cord, and, after killing her, left her body to decompose while her family worried for a week where she might be and what might have happened to her.

The death sentence in this case is supported by the necessary valid finding of at least one statutory aggravating circumstance. OCGA § 17-10-30 (c). We conclude that the trial court's erroneous refusal to give the aforementioned requests to charge did not result in the imposition of a death sentence under the impermissible influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (2).

The sentence of death imposed in this case is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The cases listed in the Appendix support the imposition of the death pen-

alty in this case.

13. The conviction for rape is reversed. The conviction for murder is affirmed. The death sentence imposed on the murder count is affirmed.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

DECIDED DECEMBER 3, 1986 —
RECONSIDERATION DENIED DECEMBER 18, 1986.

*Edwards & Krontz, Kenneth W. Krontz, Alden W. Snead, Jennifer McLeod,* for appellant.

*Frank C. Winn, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.

APPENDIX.

*Devier v. State,* 253 Ga. 604 (323 SE2d 150) (1984); *Allen v. State,* 253 Ga. 390 (321 SE2d 710) (1984); *Felker v. State,* 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982); *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980); *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979); *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976).