Byron Ashley PARKER, Petitioner-Appellant,

v.

Frederick J. HEAD, Respondent-Appellee.

No. 99-13558.

United States Court of Appeals,

Eleventh Circuit.

March 15, 2001.

Appeal from the United States District Court for the Northern District of Georgia.(No. 96-03142-CV-RWS), Richard W. Story, Judge.

Before EDMONDSON, CARNES and BARKETT, Circuit Judges.

BARKETT, Circuit Judge:

Byron Ashley Parker appeals the denial of his petition for habeas corpus pursuant to 28 U.S.C. § 2254, following his conviction for murder and the imposition of the death penalty. On appeal, Parker argues that he is entitled to relief because:

> 1. His conviction and sentence were based upon inculpatory statements obtained after he had invoked his right to counsel, in violation of his Fifth and Sixth Amendment rights.
>
> 2. He was deprived of his Sixth and Eighth Amendment rights to due process and against cruel and unusual punishment by the improper comments of the prosecutor during closing argument.
>
> 3. He was denied his Fifth, Sixth and Fourteenth Amendment rights to due process and a fair and impartial jury by the prejudicial comment of a prospective juror in the presence of other jurors.
>
> 4. His trial counsel was ineffective and he was thus deprived of his Sixth Amendment right to effective assistance of counsel when his lawyer:

(a)     admitted to the jury that Parker was guilty of capital murder;

(b)     failed to obtain or present a competent mental health expert to testify during both phases of the trial;

(c)     made prejudicial reference to Parker's possible eligibility for parole if given a life sentence.

PROCEDURAL BACKGROUND

Parker was indicted for the murder, rape and kidnapping of eleven-year-old Christie Ann Griffith. The kidnapping charge was dismissed prior to trial, and the jury found Parker guilty of murder and rape and sentenced him to death. The jury found three statutory aggravating circumstances supporting imposition of the death penalty under Georgia law: (1) the murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind or an aggravated battery to the victim; (2) the murder was committed during a rape; and (3) the murder was committed during a kidnapping with bodily injury. On

direct appeal, the Georgia Supreme Court reversed Parker's rape conviction and determined that the first two statutory aggravating circumstances were invalid. *Parker v. State,* 256 Ga. 543, 350 S.E.2d 570, 576 (1986). Nonetheless, the court affirmed his murder conviction and sentence, finding that the remaining aggravating circumstance of kidnapping with bodily injury was sufficient to support the death penalty. *Id.* The Supreme Court denied certiorari as well as a request for rehearing. *Parker v. Georgia,* 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781, *reh'g denied,* 481 U.S. 1060, 107 S.Ct. 2206, 95 L.Ed.2d 861 (1987).

On June 24, 1987, Parker filed a petition for writ of habeas corpus with the Superior Court of Butts County, which was denied after an evidentiary hearing. The Georgia Supreme Court denied Parker's timely application for a certificate of probable cause to appeal the state habeas court's judgment and ultimately denied certiorari to review the state habeas court's denial of relief. *Parker v. Zant,* 519 U.S. 1043, 117 S.Ct. 613, 136 L.Ed.2d 538 (1996). On November 15, 1996, Parker filed his petition for writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, which was also denied. Parker appeals this denial.

BACKGROUND FACTS

On June 1, 1984, Christie Ann Griffith was reported missing from her home in Douglasville, Georgia. During the ensuing investigation, the authorities learned that Parker, a resident of the trailer park where Griffith lived, had been charged with, and acquitted of, the kidnapping and sexual battery of an eight year-old girl in Florida in 1982. Accordingly, agents from the Georgia Bureau of Investigations and the Federal Bureau of Investigations went to Parker's home to question him about the missing girl and his prior arrest record.[1] After a second visit, during which Parker signed consent forms to search his home and automobile, the agents asked Parker and his wife to come to the Sheriff's Department for further questioning. Following the interrogations, Parker was asked to take a polygraph examination, and he agreed to do so the next morning.

By the next morning, Parker had changed his mind and, instead of going to the FBI office for the polygraph examination, called an attorney recommended by his wife's employer and arranged to meet him later that day. When the authorities realized that Parker would not appear for the polygraph, they sought and obtained arrest warrants alleging a violation of probation for failure to report to his probation officer and for possession of marijuana which had been found during their search of Parker's car. Parker was arrested later

---

[1]In addition to the Florida incident, Parker had pled guilty to "making terroristic threats" to two women in Fulton County, Georgia, two weeks prior to the disappearance of Griffith, and had been sentenced to five years probation.

that day at his place of employment. According to the testimony of Sheriff Lee and Parker's lawyer, the following events then transpired. Upon again being asked to take a polygraph examination, Parker replied that he wished to talk first with his attorney. Arrangements were made for Parker to speak with his attorney at the offices of the FBI prior to the polygraph examination, and Parker did so. His attorney informed Parker that he was not required to take the test and strenuously advised against doing so. However, Parker insisted on taking the test, believing that if he declined to take it his probation would be revoked because of the marijuana charge, and he indicated to his lawyer that he would pass the test. Parker's counsel did obtain the agreement of the authorities that the polygraph test would be limited to the issue of Parker's knowledge of the whereabouts of Christie Ann Griffith.

Parker's attorney attempted to observe the polygraph but was not permitted to remain in the room and left the building after the authorities indicated that the examination "might take some time." Before leaving, however, Parker's attorney told Sheriff Lee that, whatever the outcome of the test, he wanted to know when it was over and wanted Parker to contact him as soon as the examination had been completed.[2] Following the polygraph, the examiner told Sheriff Lee that he wanted to test Parker again the next day, in order to render a complete opinion. He also expressed a belief that Parker knew the location of Christie Griffith's body. Prior to leaving the FBI offices, Parker made a phone call to his attorney but was unable to reach him. Parker then asked to spend the night at home, but this request was denied, and he was transported back to the jail.

After returning to the jail, Parker was again read his Miranda rights, and the interrogation concerning the whereabouts of Christie Ann Griffith continued. Sheriff Lee testified that during the evening both he and Parker again attempted to call Parker's lawyer, but no one answered at either his home or office. Conversely, Parker's lawyer testified that after leaving Parker he had gone out to dinner but had returned home at approximately 10:30 p.m. and had not received any calls or messages until the Sheriff called at 3:30 or 4:00 a.m. The interrogation of Parker continued past midnight, and shortly after midnight Parker stated that he had killed Christie Ann Griffith, although he denied raping her, and he drew a map showing the location of the body. After a search, the body was found, and both Sheriff Lee and Parker's lawyer agree that the Sheriff then reached Parker's attorney at home between 3:30 a.m. and 4:30 a.m. and informed him that Parker had made a statement admitting that he had killed Griffith. Counsel then told Sheriff Lee that he was no longer

---

[2]Parker's attorney gave his home and office telephone numbers to Sheriff Lee and to Parker.

representing Parker.

Parker was charged with murder and rape in connection with the death of Griffith and, at a preliminary hearing before Judge Robert James of the Superior Court of Douglas County, Parker asserted his right to counsel. For the next five days, the authorities continued to interrogate Parker in the absence of counsel, up to and including the morning of June 13, just hours prior to the court hearing to appoint new counsel for Parker.

DISCUSSION

Parker's request for federal habeas corpus relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, Pub.L. No. 104-132, 110 Stat. 1214 (1996). Under amended § 2254(d), habeas relief from a state court judgment may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court clarified the nature of habeas review as set out in Section 2254(d)(1). Writing for a majority of the Court, Justice O'Connor explained that:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523. The Supreme Court rejected the restrictive "reasonable jurist" standard adopted by this court in *Neelley v. Nagle,* 138 F.3d 917, 924-25 (11th Cir.1998), *cert. denied,* 525 U.S. 1075, 119 S.Ct. 811, 142 L.Ed.2d 671 (1999), and concluded that federal habeas relief would be available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable." *Williams,* 120 S.Ct. at 1521-22.

As to findings of fact under 28 U.S.C. § 2254(d)(2), federal courts determine whether the state court's finding was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See Hauser ex rel. Crawford v. Moore,* 223 F.3d 1316, 1323 (11th Cir.2000). However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. *McBride v. Sharpe,* 25 F.3d 962, 971 (11th Cir.1994).

As to the district court's findings of fact, they are reviewed under the clearly erroneous standard. *Cunningham v. Zant,* 928 F.2d 1006, 1011 (11th Cir.1991). Mixed questions of law and fact are reviewed *de novo,* as are questions of law. *Jacobs v. Singletary,* 952 F.2d 1282, 1288 (11th Cir.1992). It is under this framework that we review Parker's claims.

1.      *Were Parker's rights under the Fifth and Sixth Amendments violated by the admission of evidence of statements obtained after Parker allegedly asked for assistance of counsel?*

A.      *Violation of the Fifth Amendment and the rule of* Edwards v. Arizona

Parker asserts that he is entitled to habeas relief because his conviction was based on statements obtained in violation of his rights under the Fifth Amendment. Specifically, Parker contends that his confession after returning to jail from the polygraph examination should have been suppressed because the sheriff continued to interrogate him after he invoked his right to counsel. In *Edwards v. Arizona,* the Supreme Court held that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

There is no question, as the Georgia Supreme Court found, that "[p]lainly, [Parker] invoked his right to counsel prior to taking the polygraph examination." *Parker v. State,* 350 S.E.2d at 573. Likewise it is clear that Parker, disregarding his lawyer's advice, voluntarily took the polygraph examination. *Id.* The Georgia Supreme Court ruled as follows:

> The real question here is whether Parker re-invoked his right to counsel *after* the completion of the examination. If he did, then further interrogation would be barred, unless initiated by Parker.
>
> It is undisputed that Parker and the sheriff tried to contact Parker's attorney after the completion of the examination, in compliance with the attorney's request. The question is whether Parker thereby expressed a desire to deal with the law enforcement officers only through counsel, and to remain free of further interrogation until he had an opportunity to talk with his attorney. We find that Parker did not unambiguously and unequivocally assert such a desire.

*Parker,* 256 Ga. at 546-47, 350 S.E.2d 570 (emphasis in original). Under *Williams v. Taylor,* we must defer to the Georgia Supreme Court's conclusions unless we find that the state court adjudication of this claim was

contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 120 S.Ct. at 1523. Specifically, we review to determine whether the Georgia Supreme Court's ruling that Parker did not re-invoke his right to counsel—subsequent to expressly waiving his right to remain silent after consultation with his lawyer—was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. *Id.* at 1506.

The Supreme Court has held that "when counsel is requested, interrogation must cease and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). The government does not contest the applicable law. Rather the government argues that there is no record evidence factually supporting Parker's argument that, after agreeing to answer questions at the polygraph examination regarding Christy Griffith's disappearance, he reinvoked his right to counsel or his right to remain silent.

The government accurately notes that throughout the history of this case the only evidence presented regarding counsel and what attempts were made to request counsel, was the testimony of Sheriff Lee, Agent Ingram, and Agent McGinnis. None of these witnesses testified that Parker ever requested counsel or asserted his right to remain silent. On the contrary, each testified that Parker was advised of his Miranda rights on several occasions and voluntarily continued to speak with the police officers and agents. Throughout all of the state and federal proceedings, neither Parker[3] nor anyone else has testified that Parker asked for counsel after the polygraph[4] or did not knowingly, freely, and voluntarily speak to the sheriff or the agents. Nonetheless, Parker argues that Sheriff Lee's testimony that he as well as Parker tried to call Parker's lawyer suffices to prove Parker's affirmative request for counsel. While it is arguable that the attempted calls could have been the result of a request for counsel, any facts leading to the attempted calls are absent from the record. Mindful that on habeas Parker has the burden to rebut by "clear and convincing evidence" the presumption that a state court's fact findings are correct, see 28 U.S.C. § 2254(e)(1), and given the absence of clear and convincing evidence that Parker re-invoked his right to counsel, we cannot say that the Georgia

---

[3]Although Parker submitted an affidavit in the state habeas corpus hearing, he did not refer to this issue in the affidavit.

[4]Although it could be argued that Parker executed only a limited waiver at the polygraph examination because his lawyer and the authorities agreed to limit the questions to a specific subject matter, such an argument is unavailing because the subject matter about which Parker agreed to respond to questioning was the disappearance of Christy Griffith.

trial court's findings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial, or that the Georgia Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

B.      *Violation of the Sixth Amendment and the rule of <u>Michigan v. Jackson</u>*

Parker additionally asserts that the admission of Parker's statements to police on June 13, 1984, which provided support for the aggravating circumstance of kidnapping with bodily injury, violated his rights under *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), as the statements were elicited after adversarial judicial proceedings had been initiated and he had invoked his right to counsel.

The Supreme Court has held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 637, 106 S.Ct. 1404.  At his court hearing on June 8, 1984, Parker advised the state judge that he wanted the assistance of counsel and requested that one be appointed for him.  However, a new attorney for Parker was not appointed until June 13, and Sheriff Lee questioned Parker "12 to 15 times" in the interim.  Notwithstanding this apparent violation of the Sixth Amendment, the state habeas court determined that this claim was procedurally barred because Parker failed to raise it at the trial level or on direct appeal.  The district court found that Parker's claim centering around the June 8 hearing was not raised on direct appeal and was therefore barred under state law. *Parker v. Turpin,* 60 F.Supp.2d 1332, 1367-68 (N.D.Ga.1999) (hereinafter *Parker II* ).  Parker argues that his claim is not procedurally barred as the Georgia Supreme Court specifically addressed it on the merits by expressly holding that there was "no Sixth Amendment error." *Parker,* 350 S.E.2d at 574.

Alternatively, Parker argues that, even if his claim is deemed defaulted, a procedural default can be excused—and therefore a federal habeas court may address the merits of a defaulted claim—if either (1) there was cause for, and prejudice from, the default;  or (2) failure to entertain the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 729-31, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  Such a fundamental miscarriage of justice has been deemed to be the imposition of a death sentence upon an individual who, but for the claimed violation, would not have been eligible for the death penalty under applicable law. *Sawyer v. Whitley,* 505 U.S. 333, 345-47, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Murray,* 477 U.S. at 496, 106 S.Ct.

2639. Parker argues that if there is procedural default it should be excused, as the failure to entertain this claim would result in a fundamental miscarriage of justice because without his improperly obtained statement regarding the kidnapping with bodily injury he would not have been eligible for the death penalty. Parker argues that the inculpatory statement made during the June 13 interrogation is the only evidence supporting the one remaining statutory aggravating circumstance—kidnapping with bodily injury.

It is unnecessary to decide whether or not Parker's Sixth Amendment claim was procedurally defaulted because his claim is unavailing in either case. If it was not procedurally barred, we cannot say that the Georgia Supreme Court's rejection of Parker's Sixth Amendment claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent in light of Parker's earlier confession and other evidence surrounding the rape and death of Griffith, which provided support for the aggravating circumstance without the June 13th statement. For the same reason we cannot say that if his claim were procedurally barred, failure to entertain the claim would result in a fundamental miscarriage of justice.

2.      *Prosecutorial misconduct during closing arguments*

The reversal of a conviction or a sentence is warranted when improper comments by a prosecutor have "so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Parker suggests that such improper comments were made in this case and that the Georgia Supreme Court's determination that the comments in question did not warrant reversal was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Parker asserts that the prosecutor injected improper comments in two instances during closing argument: (1) urging the jury to penalize Parker for exercising his constitutional rights by comparing Parker's rights to the "rights" he allegedly denied to his victim; and (2) suggesting to the jury that mental illness could not be considered mitigating.

Having reviewed the totality of the prosecutor's closing arguments, we cannot say that the Georgia Supreme Court's determination that the prosecutor's comments raise "no improprieties so serious as to require the reversal of this case in the absence of any timely objection to the state's argument" constitutes a decision that was contrary to, or an unreasonable application of, clearly established federal law.

3.      *Was the jury tainted when 11 of 12 jurors heard a reference to Parker's involvement in a previous incident?*

Parker next asserts that he was denied his Fifth, Sixth and Fourteenth Amendment rights to due process and a fair and impartial jury when, in the presence of 11 of the 12 individuals who eventually served on Parker's jury, one prospective juror stated that he had heard that Parker had been "released from a similar situation somewhere"—allegedly a reference to Parker's prior acquittal on charges of choking and molesting a young girl in the State of Florida. The relevant colloquy between defense counsel and the juror is as follows:

Q:      Did you read anything in the Neighbor or the Constitution or the Journal about this case?

A:      Yeah.

Q:      Can you recall specifically what you remember?

A:      Not particularly. I can, you know, I have a vague recollection.

Q:      Can you tell me what that vague recollection is?

A:      Okay. I remember the little girl going missing. And then I remember being arrested, the, you know—

Q:      Mr. Parker?

A:      Mr. Parker, okay. And I remember that he had been released from a similar situation somewhere in—

Q:      All right. Now if you would stop there for a moment.

Parker claims that this information was misleading and inherently prejudicial, since it implied that he was a repeat offender and the jury was not told he was acquitted of any wrongdoing in that incident.

The Supreme Court has held that a defendant has the right to trial by an impartial jury and that, "[i]n the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472-73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). To safeguard a defendant's constitutional rights, the exposure of a jury to extrinsic information has been "deemed presumptively prejudicial." *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954).[5] However, the Supreme Court held that this presumption can be rebutted by demonstrating that the juror's exposure to the information was "harmless to the defendant," and that a trial court "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties

---

[5]The district court conceded that the "information may have resulted in some prejudice because such information would have been inadmissible at trial." *Parker II,* 60 F.Supp.2d at 1380.

permitted to participate." *Id.* at 229-30, 74 S.Ct. 450.[6]

In this case the Georgia Supreme Court found no prejudice because of the remedial action taken by the trial court, including specifically questioning jurors to ensure that none of them were influenced by the venireman's comments and appropriately instructing the jury. Based on the record before us, we cannot say that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### 4.     *Ineffective assistance of counsel claims*

Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner is entitled to relief when counsel's performance falls below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's errors and omissions, the result of the proceedings would have been different. *Id.* at 687, 104 S.Ct. 2052. Parker argues that his counsel rendered ineffective assistance of counsel in three different circumstances during the trial: (1) counsel unreasonably told the jury in argument that Parker was guilty of murder; (2) counsel unreasonably failed to obtain and present a competent mental health expert at both phases; and (3) counsel unreasonably injected parole eligibility into the trial.

### A.     *Defense counsel's statements conceding Parker's guilt*

The state habeas court concluded that the evidence failed to support Parker's claim of ineffective assistance of counsel, given counsel's testimony that the concession during opening statement and closing argument was a strategic decision made in consultation with Parker and in light of Parker's admissible confession, in order to maintain credibility with the jury for sentencing purposes. Additionally, the district court concluded that Parker had not shown actual prejudice from counsel's arguments, in that he had not established a reasonably probability that, "in light of the overwhelming evidence against Parker including his

---

[6]In a subsequent case, the Supreme Court noted that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The Sixth and Ninth circuits have held, at least in part, that *Phillips* abandoned *Remmer* 's presumption of prejudice. *See United States v. Sturman,* 951 F.2d 1466, 1478 (6th Cir.1991) *cert. denied,* 504 U.S. 985, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992); *United States v. Madrid,* 842 F.2d 1090, 1093 (9th Cir.) *cert. denied,* 488 U.S. 912, 109 S.Ct. 269, 102 L.Ed.2d 257 (1988). Other circuits have rejected this theory. *See Stockton v. Virginia,* 852 F.2d 740, 744 (4th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); *United States v. Butler,* 822 F.2d 1191, 1195 n. 2 (D.C.Cir.1987) (listing the Fourth, Fifth, Seventh, Eighth, Ninth and Tenth Circuits as continuing to apply *Remmer* ). We need not decide that issue here, because even assuming *Remmer* 's presumption of prejudice still applies, we cannot say that habeas relief was improperly denied in this case.

confession," the result of the proceedings would have been different had counsel not conceded Parker's guilt. On the evidence presented to the state court, we cannot say that the state court's decision was contrary to, or an unreasonable application of, the *Strickland* standard, or that the district court erred in concluding that Parker failed to show the prejudice required under *Strickland.*

B.      *Defense counsel's failure to obtain and present competent mental health expert*

We likewise find that, on the record before the state habeas court, it cannot be said that the state court's conclusion that the evidence failed to support Parker's claim of ineffective assistance of counsel for failure to obtain and present a competent mental health expert at both phases of the trial was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Upon a review of the record, we agree with the district court that Parker has failed to demonstrate the prejudice required under *Strickland* to support a claim of ineffective assistance of counsel.

C.      *Defense counsel unreasonably injected parole eligibility into the trial*

Finally, Parker claims that defense counsel improperly injected the topic of Parker's possible eligibility for parole into the jury's sentencing deliberations. Defense counsel on direct examination had sought to elicit testimony that a person like Parker would not be paroled for at least 40 years if given a life sentence instead of the death penalty. While the witness testified to this, he also testified, on both direct and cross-examination, that in Georgia a person given a life sentence is eligible for, but would not necessarily be granted, parole after serving seven years. The state habeas court found no constitutional error. Upon a review of the record, we cannot say that Parker has produced sufficient evidence to demonstrate that there is a reasonable probability that, but for counsel's actions in this regard, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 668, 104 S.Ct. 2052. Accordingly, as Parker has not established that he was prejudiced by counsel's errors, we cannot find that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Accordingly, for all of the foregoing reasons, the district court's denial of Parker's petition for writ of habeas corpus is

AFFIRMED.